UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | | |
|---|---|---|
| In re:<br><br>OCEAN DEVELOPMENT<br> PARTNERS, LLC,<br><br>     Debtor | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) | <br><br><br><br>Chapter 11<br>Case No. 22-10043-FJB |
| In re:<br><br>GOTSPACE DATA EQUITY<br> FUND, LLC,<br><br>     Debtor | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) | <br><br><br><br>Chapter 11<br>Case No. 22-10044-FJB |

**UNITED STATES TRUSTEE'S SECOND MOTION TO CONVERT
DEBTORS' CHAPTER 11 CASES TO CHAPTER 7
(WITH CERTIFICATES OF SERVICE AND CONFERENCE)**

William K. Harrington, the United States Trustee for Region 1, moves the

Court to convert the chapter 11 cases of Ocean Development Partners, LLC

("ODP") and Gotspace Data Equity Fund, LLC ("Gotspace") (collectively

"Debtors") to chapter 7 for "cause" under 11 U.S.C. § 1112(b)(4).

In support, the United States Trustee says:

**PRELIMINARY STATEMENT**

Consistent with their duties under the Bankruptcy Code, as implemented

by the Federal Rules of Bankruptcy Procedure and the United States Trustee's

1

Operating Guidelines and Reporting Requirements For Chapter 11 Cases (the

"Guidelines"), chapter 11 debtors-in-possession must file accurate schedules and

SOFA, timely provide information reasonably requested by the United States

Trustee, appear at scheduled section 341 meetings and answer questions posed

by the United States Trustee and creditors concerning their assets, liabilities,

income, expenses, sources and uses of cash, equity interest owners and pre-

petition financial transactions.

Nicholas Fiorillo ("Fiorillo"), the Debtors' control person, and an insider

under 11 U.S.C. § 101(31)(B), has failed to discharge these duties on their behalf.

Having at least 22 days' notice, Fiorillo did not appear at the Debtors' first

jointly-scheduled, telephonic section 341 meetings, claiming through their

attorney that he was going through customs and was therefore unavailable to

attend.

Fiorillo appeared late at the Debtors' rescheduled, second section 341

meetings was not placed under oath and answered no questions, claiming that he

was on a taxiing airplane and that he did not have the debtors' schedules and

SOFA with him.

On the last possible day permitted under the Rules, Fiorillo appeared and

testified under oath at the Debtors' rescheduled, third section 341 meetings.

Among other things, he claimed that he could not review the Debtors' schedules

2

and SOFA, because he did not have internet access.  Notwithstanding that he

had signed ODP and Gotspace's schedules and SOFA under penalty of perjury,

he disavowed them, claiming that they had been filed "under duress."

At the creditors' meetings, Fiorillo declined to provide direct answers to

questions posed by the United States Trustee and creditors about the Debtors'

assets, liabilities, income, expenses and pre-petition financial transactions.  He

claimed that he owned no equity interest in ODP.

Fiorillo failed to explain at Gotspace's fourth creditors' meeting its

claimed interests in certain deposits and purchase and sale agreements listed in

its schedule "A/B." He admitted that he had never maintained books and

records for the Debtors.

Fiorillo has failed to provide the United States Trustee with documents

requested in connection with the debtors' initial debtor interviews ("IDIs").  The

Debtors have not timely filed their January, 2022 monthly operating reports

("MORs").

Lastly, according to Fiorillo, the Debtors' bankruptcy exit strategy is

predicated on their obtaining take out financing and reversing what he claims are

avoidable pre-petition transfers to certain pre-petition creditors.

These facts demonstrate "cause" to convert the Debtors' chapter 11 cases

to chapter 7 under 11 U.S.C. § 1112(b)(4), including under subsections (B) (gross

3

mismanagement of the estate), (G) (failure to attend the meeting of creditors convened under section 341(a) without good cause shown by the debtor) and (H) failure timely to provide information or attend meetings reasonably requested by the United States Trustee) and general cause, including lack of a reorganization purpose.

Conversion is in the best interests of creditors and the estates. 11 U.S.C. § 1112(b)(1).

Accordingly, the Court should convert the Debtors' chapter 11 cases to chapter 7.

In support, the United States Trustee states:

## JURISDICTION, VENUE AND LEGAL BASIS FOR RELIEF

1.   The Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334.

2.   This is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

3.   Venue is proper in this court under 28 U.S.C. §§ 1408 and 1409.

4.   The legal basis for relief includes 28 U.S.C. §§ 586(a)(3), 11 U.S.C. §§ 307, and 1112(b) and Fed. R. Bankr. P. 1017.

**FACTS**

**A.     The bankruptcy court dismisses two 2021 chapter 11 cases filed by Ocean Realty Partners, LLC, a co-debtor of the Debtors that is owned by Fiorillo.**

5.     Ocean Realty Partners, LLC ("ORP") filed two voluntary chapter 11 cases on January 11 and November 1, 2021, respectively.  Case Nos. 21-10025-JEB and 21-11593-JEB.

6.     Eric Appleton signed ORP's petitions as "Manager."  Case No. 21-10025-JEB, DE1.  Case No. 21-11593-JEB, DE1.

7.     ORP filed schedules and SOFA in its first case.  In response to SOFA question 28, ORP claimed that Fiorillo was its 100% member.  Case No. 21-10025, DE16 at 22.

8.     ORP failed to file schedules and SOFA in its second case.  Case No. 21-11593-JEB.

9.     The United States Trustee convened five section 341 meetings in ORP's first case.  Case No. 21-10025-JEB.  *See* docket entries at February 16 and 26, March 11 and 19 and April 8, 2021.

10.     ORP never appeared for the section 341 meeting scheduled in its second case.  Case No. 21-11593-JEB.  *See* docket entry at December 1, 2021.

11.     The Court granted the United States Trustee's motions to dismiss both of ORP's chapter 11 cases for cause under 11 U.S.C. § 1112(b)(4), because,

5

among other things, it failed to file employment applications for its attorneys, James P. Ehrhard, Esq. and Neil Kruezer, Esq., and to submit documents reasonably requested by the United States Trustee.  Case No. 21-10025-JEB, DE21; 26.  Case No. 21-11592-JEB, DE15; 18.

12.    The Debtors listed ORP as a co-debtor on their schedule "H." *See infra* at § G(iii).

**B.    Creditors file pre-petition debt collection actions against the Debtors and Fiorillo.**

13.    In December, 2021, creditors commenced three separate state court debt collection actions against Fiorillo and entities owned by him, including the Debtors alleging defaults under borrowing pre-petition loan facilities:

    a.  In *Raymond C. Green Funding, LLC and Raymond C. Green, Inc. v. Ocean Development Precinct I, LLC, Ocean Development Partners, LLC, Nicholas Fiorillo and Connecticut Attorneys' Title Insurance Co.*, HB-CV22-5030673-S ("Connecticut Superior Court Action") (filed December 16, 2021 in Connecticut Superior Court), the plaintiffs alleged in a complaint attached to their application for prejudgment remedy that they had lent $3,000,000 to Fiorillo, ODP and Ocean Development Precinct I ("Ocean Precinct") to make deposits ("Deposits") on contracts to purchase real properties in Connecticut ("P&S Agreements") collateralized, among other things, by pledges of the Deposits.

    The complaint attached a loan agreement signed by ODP and Ocean Precinct (Exhibit "A"), a promissory note signed by Ocean Precinct (Exhibit "B"), a forbearance agreement executed by ODP, Ocean Precinct and Fiorillo individually, lists identifying properties with P&S Agreements and their

sellers (Exhibit "C") and an amended and restated note (Exhibit "D").

Gotspace signed none of the loan documents ("Loan Documents"). Nor was it identified as a counterparty to any P&S Agreement.

b.   In *Samuel B. Spitalny et al. v. Nicholas Fiorillo, Gotspace Data Equity Fund, LLC et al.*, 2184CV02894 ("Spitalny Reach and Apply Action") (filed December 21, 2021 in Suffolk Superior Court) the plaintiffs alleged that they had lent $6,100,000 to Fiorillo and Gotspace in exchange for profit participation rights in Gotspace and collateralized by Fiorillo's membership interests in LLCs that owned self-storage facilities;[1] and

c.   In *Raymond C. Green, Inc., as Trustee of the Raymond C. Green Trust v. Fiorillo, Ocean Development Partners, LLC et al.*, 2184CV02950 ("Green Reach and Apply Action") (filed December 29, 2021), the plaintiffs sought to reach and apply Fiorillo's membership interests in ODP, Gotspace and other entities after he defaulted on loan guarantees totaling over $6,000,000.

14.   In their answer to the plaintiff's complaint in the Connecticut Superior Court Action, Fiorillo, ODP and Ocean Precinct specifically admitted that "ODP and [Ocean Precinct] . . . are wholly owned by Fiorillo . . . ." True and correct copies of the complaint and answer in Connecticut Superior Court Action and the complaints in the Spitalny and Green Reach and Apply Actions

---

[1]   Fiorillo unsuccessfully sought to remove the Spitalny Reach and Apply Action to United States District Court. *Samuel B. Spitalny et al. v. Nicholas J. Fiorillo et al.*, 21-cv-12140-MLW, slip op. (January 13, 2022) (remanding action to Suffolk Superior Court).

are attached hereto for all purposes as Exhibits 1, 2, 3 and 4, respectively.

    **C.**    **The Debtors file chapter 11 petitions and documents admitting that Fiorillo owns and controls them.**

    15.    On January 14, 2022, Fiorillo caused voluntary chapter 11 petitions to be filed on behalf of ODP and Gotspace.  Fiorillo signed each LLC's petition as "sole manager/office owner."  Case No. 22-10043-FJB, DE1; Case No. 22-10044-FJB, DE1.

    16.    Fiorillo, as "President and Manager," caused each Debtor to file a "statement regarding authority to sign and file petition" in which he claimed that "on January 13, 2022 . . . the Board of Directors of [each] corporation" authorized him to file bankruptcy cases on its behalf.  Case No. 22-10043-FJB, DE5; Case No. 22-10044-FJB, DE5.

    17.    Fiorillo caused each Debtor to file a "List of Equity Holders" stating that he was its "100% Common Equity" owner.  Case No. 22-10043-FJB, DE30; Case No. 22-10044-FJB, DE32.

    18.    On the petition date, the Court scheduled the Debtors' section 341 meetings for February 10, 2022.  But the Clerk did not mail the meeting notices until the following day, when the Debtors filed their creditors' matrices.  Case No. 22-10043-FJB, DE9; Case No. 22-10044-FJB, DE9.

**D.    The Court approves the Debtors' application to employ
Carmenelisa Perez-Kudzma as their general bankruptcy
counsel.**

19.    The Debtors moved to retain Carmenelisa Perez-Kudzma as their

general bankruptcy counsel on January 19, 2022.  The Court approved the

applications by orders dated February 4, 2022.  Case No. 22-10043-FJB, DE11;

32.  Case No. 22-10044-FJB, DE8; 31.

**E.    The Court denies the Debtors' motions to extend the
automatic stay to non-debtor LLCs also owned by Fiorillo.**

20.    On January 19, 2022, the Debtors moved to extend their automatic

stay to non-debtor LLC defendants "solely owned by Nicholas Fiorillo" in the

Spitalny and Green Reach and Apply Actions.  The Debtors stated that they, too,

were "solely owned by Nicholas Fiorillo . . . ."  Case No. 22-10043-FJB, DE12.

Case No. 22-10044-FJB, DE10.

21.    By orders dated February 8, 2022, the Court denied the motions.

Case No. 22-10043-FJB, DE27; 36.  Case No. 22-10044-FJB, DE29; 37.

**F.    The United States Trustee conducts the Debtors' IDIs.**

22.    On January 18, 2022, the United States Trustee, through his analyst,

Ms. Amber Nevers,  emailed the Guidelines to the Debtors and Attorney Perez-

Kudzma, scheduled the Debtors' IDIs for January 27, 2022 and requested that

the Debtors provide, prior to the IDIs, an executed acknowledgement that they

had received and understood the Guidelines, copies of their federal tax returns for the previous two years, a schedule of aged accounts receivable and copies of bank statements and cancelled checks for every pre-petition bank account to which they had access for the year prior to the petition date ("IDI Documents").

23.    Following the IDIs, on January 28 and February 7, 2022, Ms. Nevers followed up with Attorney Perez-Kudzma, requesting that the Debtors provide the IDI Documents and reminding her that the Debtors' first MORs, for the period January 14, 2022 – January 31, 2022, were due on or before February 21, 2022.

24.    To date, the Debtors have neither provided the United States Trustee with the IDI Documents nor filed their January, 2022 MORs.

**G.    Fiorillo signs the Debtors' schedules and SOFA under penalty of perjury.**

25.    The Debtors filed their schedules and SOFA on February 2, 2022.

26.    Fiorillo signed ODP's schedules and SOFA under penalty of perjury in his capacity as its "Principal."  Case No. 22-10043-FJB, DE27 at 27; DE26 at 14.

27.    Fiorillo signed Gotspace's schedules and SOFA under penalty of perjury in his capacity as its "Owner/Principal."  Case No. 22-10044-FJB, DE29 at 26; DE30 at 14.

10

### i.     The Debtors' schedules "A/B"

28.     In its schedule "A/B," ODP stated that, as of the petition date, it had $17 in a checking account.  Case No. 22-10043-FJB, DE27 at 2.

29.     ODP claimed as its primary assets two residences located at 190 Mount Vernon Street and 156 Grant Avenue, Newton, Massachusetts.  *Id.* at 7. It claimed that owned "Equitable Beneficial Interests" in ORP and Ocean Precinct.  *Id.* at 3.  And it claimed that it had "wrongful foreclosure" and "Wrongful Deed in lieu" claims totaling at least $6,500,000.  *Id.* at 7.

30.     In its schedule "A/B," Gotspace stated that, as of the petition date, it had $500 in a checking account.  Case No. 22-10044-FJB, DE29 at 2.

31.     Gotspace claimed that its primary assets were "P&S Deposits on Land held CATIC Titler and Sellers" totaling $5,500,000.  *Id.* at 3.  It claimed "Other intangible, or intellectual property" and "Goodwill" totaling $10,000,000. *Id.* at 7.

### ii.     Gotspace's schedule "E/F"

32.     In its schedule "E/F," Gotspace stated that Fiorillo held pre-petition, undisputed, unsecured claims for salary of $700,000 and "Pledged Equity and Loans" totaling $40,000,000.  Case No. 22-10044-FJB, DE29 at 15. It listed a $22,500,000 debt owed to an entity named "Gotcapital" as undisputed. It listed non-insider claims totaling $6,900,000 owed to Raymond C. Green, Inc.,

11

Peter Spitalny, Samuel Spitalny and S&Q Data as "disputed."    And it listed Sullivan & LeShane, Inc., a Connecticut government relations firm, as holding an undisputed unsecured claim totaling $18,000,000.

### iii.    The Debtors' schedule "H"

33.    In their schedule "H," Fiorillo listed the Debtors, himself, ORP, Ocean Precinct and 18 other LLCs as co-debtors (collectively "Co-Debtors"). Case No. 22-10043-FJB, DE27 at 22-24.  Case No. 22-10044-FJB, DE29 at 21-23.

### iv.    The Debtors' SOFA

34.    In response to the Debtors' SOFA questions 1 and 2, Fiorillo stated that the Debtors had booked no business or non-business revenue for the past two years.  Case No. 22-10043-FJB, DE26 at 1.  Case No. 22-10044-FJB, DE30 at 1.

35.    In response to the ODP's SOFA questions 5 and 13, Fiorillo stated that ODP had transferred $5,000,000 and $25,950,000 to "Raymond C. Green" within 90 days and two years of the petition date, respectively.  Case No. 22-10043-FJB, DE26 at 3 and 6.

36.    In response to the Gotspace's SOFA questions 5 and 13, Fiorillo stated that Gotspace had transferred $25,950,000 and $30,500,000 to "Raymond C. Green" within 90 days and two years of the petition date, respectively.  Case

No. 22-10044-FJB, DE26 at 3 and 6.

37.    In response to the Debtors' SOFA question 26, Fiorillo stated that

he maintained no books and records for the Debtors.  Case No. 22-10043-FJB,

DE26 at 11 ("Debtor does not keep formal records").  Case No. 22-10044-FJB,

DE30 at 11 ("No formal records kept").

38.    In response to ODP's SOFA question 28, Fiorillo stated that he

owned 100% of the interests in ODP and was "Owner/Manager/Principal."

Case No. 22-10043-FJB, DE26 at 13.

39.    In response to Gotspace's SOFA question 28, Fiorillo stated that

he owned 100% of the interests in the Gotspace and was "Owner and Principal."

Case No. 22-10044-FJB, DE30 at 13.

**H.    The Debtors' bankruptcy exit strategy.**

40.    On February 8, 2022, Fiorillo filed affidavits ("Affidavits") in the

Debtors' cases admitting that he had borrowed millions of dollars from Ray

Green and the Spitalnys to develop data centers in Connecticut with the P&S

Agreements and Deposits and laying out their case exit strategy.  Case No. 22-

10043-FJB, DE35.  Case No. 22-10044-FJB, DE29 at 21-23.  He stated:

> [W]e have received loans for the benefit of Ocean Development
> Partners and it's (sic) affiliates Ocean Companies from both
> Raymond Green and S& Q Data Partners . . . we have even now
> over $5,500,000 million dollars in good faith deposit monies we
> have with the sellers of our vaulable (sic) data land, where

13

approximately $3,000,000 million dollars in on deposit with CATIC for our contemplated land purchases . . . Our intent is complete two successful Chapter 11 reorganization plans (sic) in short order and look repay our financial obligations and hopeful (sic) realize substantial profits. We have already obtained commitments to repay our loans to our creditors but these creditors have now "ganged up" on my companies and do not want to be repaid and are now focused on usurping over $500,000,000 in equity that has been realized in our real estate investments. I founded and formed Gotspace Data Partners, LLC and other affiliated Gotspace entities including but not limited to Got Space, LLC; Gotspace Data Equity Fund, LLC; Gotspace Equity Fund 1, LLC; and Gotspace Equity Fund I, LLC. I also founded Ocean Development Partners and its affiliated companies and I am the sole manager of same. We expect the total value of the venture will be between $2 billion and $5 billion for Data and the future value of our Newton Development projects at between $12,000,000 and $14,000,000 million dollars . . . .

Affidavits.

## I.     The Debtors file Applications to employ Masterson as successor general bankruptcy counsel.

41.     ODP and Gotspace filed separate applications ("Applications") to employ Masterson as successor general bankruptcy counsel on February 18, 2022. Case No. 22-10043-FJB, DE40. Case No. 22-10044-FJB, DE40.

42.     The Applications stated that "Attorney Perez-Kudzma has sought to withdraw from this matter." *Id.* at 1.

43.     Attorney Perez-Kudzma did not file her motion to withdraw until February 23, 2022, however. Case No. 22-10043-FJB, DE43; Case No. 22-10044-FJB, DE44.

14

44.     The United States Trustee objected to Masterson's employment, arguing that his simultaneous representation of the Debtors and Fiorillo in the Spitalny and Green Reach and Apply Actions and the Connecticut Superior Court Action constitutes a disqualifying conflict under 11 U.S.C. §§ 101(31) and 327(a) and Fed. R. Bankr. P. 2014(a).  Case No. 22-10043-FJB, DE44.  Case No. 22-10044-FJB, DE45.

45.     The Court has scheduled a hearing on the Applications for March 15, 2022.  Case No. 22-10043-FJB, DE45; Case No. 22-10044-FJB, DE46.

**J.      The United States Trustee convenes the Debtors' first section 341 meetings.  Fiorillo does not appear.**

46.     On February 10, 2022, at the time noticed to creditors (1:30 p.m.), the United States Trustee duly called the Debtors' telephonic section 341 meetings.  The Debtors' attorney, Carmenelisa Perez-Kudzma, Esq., appeared.

47.     Fiorillo did not.

48.     Attorney Perez-Kudzma explained that Fiorillo had told her that he was going to be on an airplane trip to a foreign country at the time of the meeting and could not participate, because he had to go through customs and/or could not get cellphone coverage to join the meeting.

49.     The United States Trustee rescheduled the section 341 meeting for February 18, 2022 at 10:00 a.m.  *See* docket entry at February 10, 2022.

50.     Attorney Perez-Kudzma filed a notice of the rescheduled meeting. Case No. 22-10043-FJB, DE39.  Case No. 22-10044-FJB, DE41.

**K.     The United States Trustee convenes the Debtors' rescheduled, second section 341 meetings.  Fiorillo appears late, is not placed under oath and answers no questions.**

51.     The February 18, 2022 telephonic section 341 meeting was scheduled to begin at 10:00 a.m.  The Debtors' attorney, Carmenelisa Perez-Kudzma, Esq., appeared, as did proposed successor counsel, Attorney Masterson.

52.     Fiorillo did not appear until approximately 10:43 a.m.

53.     He was not placed under oath and said that he was on an airplane that had just landed and that it was taxing to the gate.  He added did not have the debtors' schedules and SOFA with him and could not answer questions about them.

54.     Fiorillo declined to say where he was, because his creditors were "loan sharks."  He complained that Attorney Perez-Kudzma, "as the [bankruptcy] judge had said, was in over her head, unfortunately."  He said that he intended to retain a Connecticut law firm for the debtors to bring "massive" adversary proceedings against his creditors "who are trying to extort me" and pay (presumably other) creditors "100%."

55.     After ending the telephonic meeting, the United States Trustee

16

agreed with Attorney Perez-Kudzma to reschedule the debtors' section 341 meetings, this time for February 23, 2022, the last possible day under Fed. R. Bankr. P. 2003 (requiring the United States Trustee to convene a chapter 11 section 341 meeting "no fewer 21 and no more than 40 days after the order for relief). *See* docket entries at February 18, 2022.

56.     Attorney Perez-Kudzma filed notices of rescheduled section 341 meetings for the debtors.  DE39.  Case No. 22-10044-FJB at DE39.

**L.     ODP and Gotspace file emergency motions to continue their third rescheduled section 341 meetings hours before they were to begin.**

57.     Approximately two and one-half hours before their rescheduled, third section 341 meetings were to begin, ODP and Gotspace filed emergency motions to continue them, alleging, among other things that

> a.   "Debtor has terminated its current counsel, as of Friday February 18, 2022 . . . ;"
>
> b.   "On February 18, 2022, the [United States] Trustee conducted the § 341 meeting . . .;" and
>
> c.   "The principal of the Debtor, Nicholas Fiorillo, attended the meeting and was prepared to move forward . . . ;"

58.     The Court denied the motions without a hearing.  Case No. 22-10043-FJB, DE42; Case No. 22-10044-FJB, DE43.

**M.    Fiorillo appears for the Debtors' rescheduled, third section 341 meetings and testifies under oath.**

59.    Fiorillo appeared for the debtors' third telephonic section 341 meeting on February 23, 2022 and was placed under oath.  At Fiorillo's request, the United States Trustee conducted the ODP section 341 meeting first.

60.    Fiorillo began by denying that he owned any interest in ODP, notwithstanding that he had signed the Debtors' petitions, lists of equity security holders, certificates  of corporate votes, schedules and SOFA, his responses to SOFA question 28 and the Debtors' motions to extend the automatic stay (Case No. 22-10043-FJB, DE1; 12; 26 at 13; 26 at 14; 27 at 30.  Case No. 22-10044-FJB, DE1; 10; 29 at 36; 30 at 13; 32).

61.    Fiorillo testified that ORP and Ocean Development Real Estate Trust, a trust for which Fiorillo serves as trustee, owned the equity interests in ODP and that ORP and Ocean Development Trust, in turn, owned each other's equity.

62.    Fiorillo disavowed the Debtors' schedules and SOFA, claiming that he had been under duress when he signed them.  He said he claimed that he could not review the Debtors' schedules and SOFA, because lacked internet access.

63.    Fiorillo repeatedly declined to answer questions about ODP's

18

assets, liabilities, income, expenses, pre-petition financial transactions and ownership. He offered no explanation for ODP's claimed interest in Ocean Precinct. He was argumentative, uncooperative and made extended, rambling attacks on the Debtors' creditors, whom he said were "loan sharks" intent on stripping him and the Debtors of their assets.

64.    After almost three hours, the United States Trustee concluded the ODP meeting on February 23, 2022. *See* Case No. 22-10043-FJB at February 23, 2022 docket entry.

65.    The United States Trustee started and continued the Gotspace meeting until Thursday, March 3, 2022 at 10:00 a.m. *See* Case No. 22-10044-FJB at February 23, 2022 docket entry.

### N.    Fiorillo appears for Gotspace's rescheduled, fourth section 341 meeting and testifies under oath.

66.    The United States Trustee conducted Gotspace's rescheduled, fourth telephonic section 341 meeting on March 3, 2022, beginning at 10:00 a.m.. He reminded Fiorillo that he was still under oath.

67.    As with ODP, Fiorillo repeatedly declined to answer questions about Gotspace's assets, liabilities, income, expenses, pre-petition financial transactions and ownership, deferring to Masterson as "corporate counsel." In response to several questions, he said that he would confer with Masterson and

19

provide answers later.  He said that Gotspace's schedules were prepared under duress.

68.    Fiorillo declined to answer questions about the Deposits and P&S Agreements and suggested that the United States Trustee should bring all of the defendants in the Connecticut Superior Court Action and the Green Reach and Spitalny Apply Actions before the bankruptcy court under "Rule 4027."

69.    Fiorillo claimed that the United States Trustee's objection to the employment application of the debtors' proposed successor counsel, Shawn M. Masterson, Esq., under 11 U.S.C. § 327(a) "deprived [him] of his Sixth Amendment rights," notwithstanding that Masterson and a second lawyer, Kevin Salvaggio, Esq., were on the line assisting him.  Attorney Salvaggio stated that he was not admitted the practice law in the Commonwealth of Massachusetts.

70.    Fiorillo claimed that he had "only drafts" of Gotspace's schedules and SOFA and not the documents filed with the Court, which needed to be amended.

71.    Fiorillo stated that he was in the United States of America but declined to say where, claiming that he was in fear of his life and safety but available to help.  He mentioned an investigation by the FBI.

72.    Fiorillo said that he had received specific threats to his life.  But he deferred to Attorney Salvaggio when asked when the most recent threat was

20

made.  Attorney Salvaggio stated that he could neither confirm nor deny any such information.

73.    Based on information and belief, including a review of the pleadings filed in the Connecticut Superior Court Litigation and the Green and Spitalny Reach and Apply Actions and the Debtors' filings in this case, and subject to further discovery:

    a.  because it signed none of the Loan Documents, Gotspace has no interest in the P&S Agreements and the Deposits;

    b.  Fiorillo's assertion in Gotspace's schedule "A/B" under penalty of perjury that Gotspace had property interests in the P&S Agreements and the Deposits was false;

    c.  Fiorillo's testimony at ODP's February 23, 2022 section 341 meeting that he did not own any equitable interest in ODP was false, because he stated the opposite in documents filed in the Debtors' chapter 11 (Case No. 22-10043-FJB, DE1; 12; 26 at 13; 26 at 14; 27 at 30.  Case No. 22-10044-FJB, DE1; 10; 29 at 36; 30 at 13; 32) and in his answer to the Connecticut Superior Court Litigation complaint (*see* Exhibit 2 attached hereto, at page 3 of 50) ("ODP and [Ocean Precent 1] are entities which are wholly owned by Fiorillo");

    d.  in failing to attend the Debtors' first two section 341 meetings, Fiorillo sought to delay his creditors and the United States Trustee;

    e.  Fiorillo owns "Gotcapital;

    f.  Gotcapital is a non-debtor affiliate of the Debtors;

    g.  the creditors referred to in Fiorillo's Affidavits, who "have now 'ganged up' on my companies and do not want to be

repaid and are now focused on usurping over $500,000,000 in equity . . . ," are Raymond C. Green, Inc., Peter Spitalny, Samuel Spitalny and S&Q Data, who are listed in Gotspace's schedule "E/F" as holding "disputed" claims totaling $6,900,000;

h.  the creditors against whom Fiorillo said he intended to bring "massive" adversary proceedings are Raymond C. Green, Inc., Peter Spitalny, Samuel Spitalny and S&Q Data.

# I.  STATUTORY FRAMEWORK

## A.  Duties of a chapter 11 debtor in possession.

74.  A debtor in possession has many of the rights, powers, and duties of a chapter 11 trustee. *See* 11 U.S.C. § 1107(a) ("Rights, powers, and duties of debtor in possession"). These include the duty to provide information "concerning the estate and the estate's administration as is requested by parties in interest . . .," including the United States Trustee. *See* 11 U.S.C. §§ 1107(a); 1106(a)(1); 704(a)(7).

75.  A debtor in possession must filed schedules of assets and liabilities and a statement of its financial affairs. 11 U.S.C. § 521(1) ("Debtor's duties"). Fed. R. Bankr. P. 1007 ("Lists, Schedules, Statements and Other Documents; Time Limits").

76.  A debtor must "appear and submit to examination under oath at the meeting of creditors under section 341(a) of this title. Creditors . . . or the United States Trustee may examine the debtor. The United States Trustee may

administer the oath required under this section." 11 U.S.C. § 343. Fed. R. Bankr.

P. 2003 ("Meeting of Creditors or Equity Security Holders").

77.    "Examination of the debtor in reorganization cases . . .

encompasses a broad are of investigation 'including inquiry into the liabilities and

financial condition of the debtor, the operation of his business, and the

desirability of the continuance thereof, and other matters relevant to the case and

to the formulation of the plan . . . .'"  3 COLLIER ON BANKRUPTCY, ¶ 343.01

(Alan N. Resnick & Henry J. Sommer, eds., 16th ed. rev. 2022), *citing* S. Rep. No.

989, 95th Cong. 2d Sess. 43 (1978).

78.    It is the responsibility of the individual in control of a debtor

corporation or partnership who is "most knowledgeable about the entity" to

appear and testify at its section 341 meeting. *Id.* at 343.02.

79.    A debtor in possession owes a fiduciary duty to the estate's

creditors. *Commodity Futures Trading Com'n v. Weintraub*, 471 U.S. 343, 352, 355

(1985); *see also Bezanson v. Thomas (In re R & R Assocs. of Hampton)*, 402 F.3d 257,

266 (1st Cir. 2005) (stating that debtor in possession duties "include the

maximization of the value of the debtor's assets").

80.    To assist debtors in possession in carrying out their statutory and

fiduciary duties, the United States Trustee has published the Guidelines, which

are provided to every chapter 11 debtor in possession.[2]  Among other things, the Guidelines require a debtor in possession to attend an initial debtor interview conducted by the United States Trustee no later than 14 days after the petition date (and before the 11 U.S.C. § 341 first meeting of creditors), to close all pre-petition bank accounts, to open debtor in possession accounts at authorized banks and to file monthly operating reports listing all post-petition financial transactions, including receipts and disbursements of cash.  Guidelines at 8-15.

81.    The Guidelines require a debtor in possession to provide the United States Trustee with evidence of insurance on all assets and operations,[3] copies of federal income tax returns filed in the previous two years, a chart or list of accounts or general ledger, and "[c]opies of bank statements and cancelled checks for every pre-petition bank account held by the Debtor or to which the Debtor had or has access for the six months prior to the bankruptcy filing . . . ." *Id.* at 8-9.

---

[2]    The version of the Guidelines effective January 1, 2020 is publicly  available at https://www.justice.gov/ust-regions-r01/file/operating_guidelines.pdf/download (last checked May 24, 2021).

[3]    The United States Trustee moved to convert the Debtors' chapter 11 case to chapter 7 for cause under 11 U.S.C. § 1112(b)(4)(C) (failure to maintain appropriate insurance that poses a risk to the estate or to the public) and (H) (failure to provide information reasonably requested by the United States Trustee) on January 21, 2022. The United States Trustee withdrew the motions after a hearing on January 25, 2022, without prejudice to renewal, when the Debtors' provided evidence of insurance. Case No. 22-10043-FJB, DE15; 20.  Case No. 22-10044-FJB, DE13 21.

82.     The Guidelines also require a debtor-in-possession to provide the United States Trustee with detailed information about entities with which it is "indirectly or directly affiliated, related, and/or shares common ownership . . . ." *Id.* at 10.

### B.     Conversion under 11 U.S.C. § 1112(b).

83.     Under 11 U.S.C. § 1112(b)(1), "after notice and a hearing, the court shall convert a case under [chapter 11] to a case under chapter 7 or dismiss a case under [chapter 11], whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate."

84.     Section 1112(b)(4) contains a nonexclusive list of 16 examples of "cause," including gross mismanagement of the estate (subsection (B)),  failure to attend the meeting of creditors convened under section 341(a) without good cause shown by the debtor) and failure timely to provide information or attend meetings reasonably requested by the United States Trustee (subsection (H)).

85.     Because the examples of "cause" listed in 11 U.S.C. § 1112(b)(4) are not exclusive, cause could also include fraud, dishonesty, incompetence, gross mismanagement of the affairs of the Debtors and/or breach of fiduciary duty by the Debtors' current management.  *Compare* 11 U.S.C. 1104(a) (requiring the appointment of a chapter 11 trustee for "cause").

25

86.    "Once cause is found, the burden shifts to the opposing party to demonstrate 'unusual circumstances' that establish conversion or dismissal is not in the best interests of the creditors and the estate. The bankruptcy court retains discretion in determining whether unusual circumstances exist and whether conversion or dismissal is in the best interest of creditors and the estate." *Efron v. Canelario (In re Efron)*, 529 B.R. 396, 411 (B.A.P. 1st Cir. 2015). *Accord, Andover Covered Bridge, LLC v. Harrington (In re Andover Covered Bridge, LLC)*, 553 B.R. 162, 171-172 (B.A.P. 1st Cir. 2016). *See Hover v. Harrington (In re Hoover)*, 828 F.3d 5 (1st Cir., 2016) (affirming conversion order upon a showing of "cause").

**ARGUMENT**

**THE COURT SHOULD CONVERT THE DEBTORS' CHAPTER 11 CASES TO CHAPTER 7**

A.    **Cause exists under 11 U.S.C. § 1112(b)(4).**

87.    The following demonstrates that cause exists to covert the Debtors' chapter 11 cases to chapter 7 under 11 U.S.C. § 1112(b)(4), including under subsection (B) (gross mismanagement of the estate), (F) (unexcused failure to satisfy timely any filing or reporting requirement established by the this title or by any applicable rule to a case under this chapter), (G) (failure to attend the meeting of creditors convened under section 341(a) without good cause shown by the debtor) and (H) failure timely to provide information or attend meetings

reasonably requested by the United States Trustee):

    a.   Fiorillo's failure to attend and testify at the Debtors' first two section 341 meetings;

    b.   Fiorillo's failure to spontaneously and truthfully answer questions posed by the United States Trustee and creditors at the Debtors' third (and Gotspace's fourth) section 341 meetings concerning the Debtors' assets, liabilities, income, expenses, sources and uses of cash, equity interest owners and pre-petition financial transactions as set forth in their schedules and SOFA;

    c.   Fiorillo's false oath in Gotspace's schedule "A/B" that Gotspace asserted property interests in the P&S Agreements and the Deposits;

    d.   Fiorillo's false oaths at ODP's February 23, 2022 section 341 meeting that he did not own any equitable interest in ODP;

    e.   the Debtors' failure to file MORs with the Court and the United States Trustee;

    f.   the Debtors' failure to provide the IDI Documents reasonably requested by the United States Trustee; and

    g.   the Debtors' failure to provide the United States Trustee with the IDI Documents, despite repeated follow-up.

88.    Fiorillo's admission in response to the Debtors' SOFA question 26 that he maintained no books and records for them prior to the petition date separately constitutes incompetence or gross mismanagement of the affairs of the Debtors and, therefore, "cause" under 11 U.S.C. § 1112(b)(4).

89.    Moreover, based on the Debtors' SOFA, the Affidavits and

Fiorillo's testimony at the Debtors' section 341 meetings, the Debtors do not

have a valid reorganization purpose and can confirm no plan where, as here:

    a.  they have no operations or employees and have booked no revenue for the two years prior to the petition date;

    b.  plan confirmation is predicated upon the Debtors' obtaining take out financing and reversing what they claim are avoidable pre-petition transfers to pre-petition creditors; and

    c.  they list the majority of their creditors' claims as "disputed" while listing claims to Fiorillo and Gotcapital totaling $63,200,000 as undisputed.

*See Field Station LLC v. Capitol Food Corp. (In re Capitol Food Corp.)*, 490 F.3d 21, 25-26

(1st Cir. 2007) (recognizing that while there is no "good faith" requirement for filing

chapter 11, there must be a reorganization purpose, such as to maximize the return

for unsecured creditors).

90.    This constitutes general "cause" to convert the Debtors' chapter 11

case to chapter 7.  11 U.S.C. § 1112(b)(4).

91.    Conversion is in the best interests of the estate.  *Andover Covered*

*Bridge, LLC v. Harrington (In re Andover Covered Bridge, LLC)*, 553 B.R. 162, 178

(B.A.P. 1st Cir. 2016).

92.    Accordingly, the Court should convert the Debtors' chapter 11

cases to chapter 7.

**REQUESTED RELIEF**

For these reasons, the United States Trustee requests that the Court enter orders: 1) converting the Debtors' chapter 11 cases to chapter 7; and 2) granting him all such other and further legal and equitable relief to which he may be entitled.

Respectfully submitted,

WILLIAM K. HARRINGTON
UNITED STATES TRUSTEE
REGION 1

By:    */s/ Eric K. Bradford*
Eric K. Bradford BBO#560231
Department of Justice
John W. McCormack Post Office & Courthouse
5 Post Office Square, 10th Floor, Suite 1000
Boston, MA 02109-3934
PHONE: (202) 306-3815
FAX: (617) 565-6368
Dated: March 9, 2022.      Eric.K.Bradford@USDOJ.gov

## CERTIFICATE OF SERVICE

I certify that on March 9, 2022, true and correct copies of the foregoing motion were served by CM/ECF only upon the individuals who filed notices of appearance in the Court's CM/ECF database, including counsel for the Debtors identified below.

Respectfully submitted,

WILLIAM K. HARRINGTON
UNITED STATES TRUSTEE
REGION 1

By:    */s/ Eric K. Bradford*
Eric K. Bradford BBO#560231
Department of Justice
John W. McCormack Post Office & Courthouse
5 Post Office Square, 10th Floor, Suite 1000
Boston, MA 02109-3934
PHONE: (202) 306-3815
FAX: (617) 565-6368
Dated: March 9, 2022.    Eric.K.Bradford@USDOJ.gov

**BY CM/ECF:**

Shawn M Masterson on behalf of Debtor Ocean Development Partners, LLC
smasterson@sdmlawgroup.com

Shawn M Masterson on behalf of Debtor Gotspace Data Equity Fund, LLC
smasterson@sdmlawgroup.com

Carmenelisa Perez-Kudzma on behalf of Debtor Ocean Development Partners, LLC
carmenelisa@pklolaw.com, evan@pklolaw.com

David J. Reier on behalf of Interested Party Raymond C. Green, Inc.
david.reier@arentfox.com, dreier@pbl.com

Michael Brier on behalf of Creditor S&Q Data LLC
michael.brier@gesmer.com

Michael Brier on behalf of Creditor Jacob L Spitalny
michael.brier@gesmer.com

Michael Brier on behalf of Creditor Samuel B Spitalny
michael.brier@gesmer.com

Michael Brier on behalf of Creditor Stephen Quillinan
michael.brier@gesmer.com

Sean W. Gilligan on behalf of Creditor S&Q Data LLC
sean.gilligan@gesmer.com, connie.ballou@gesmer.com

Sean W. Gilligan on behalf of Creditor Jacob L Spitalny
sean.gilligan@gesmer.com, connie.ballou@gesmer.com

Sean W. Gilligan on behalf of Creditor Samuel B Spitalny
sean.gilligan@gesmer.com, connie.ballou@gesmer.com

Sean W. Gilligan on behalf of Creditor Stephen Quillinan
sean.gilligan@gesmer.com, connie.ballou@gesmer.com

## CERTIFICATE OF CONFERENCE

I certify that on March 8, 2022, I sent a draft of the foregoing motion to Attorneys Perez-Kudzma and Masterson for their review.

Fiorillo responded by email.

<div style="margin-left: 40%;">

Respectfully submitted,

WILLIAM K. HARRINGTON
UNITED STATES TRUSTEE
REGION 1

</div>

By:    */s/ Eric K. Bradford*
Eric K. Bradford BBO#560231
Department of Justice
John W. McCormack Post Office & Courthouse
5 Post Office Square, 10th Floor, Suite 1000
Boston, MA 02109-3934
PHONE: (202) 306-3815
FAX: (617) 565-6368
Dated: March 9, 2022.                    Eric.K.Bradford@USDOJ.gov